IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EURELL MONTGOMERY, and STERLING MCKOY, as Trustee;<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. BANK N.A., U.S. BANK NATIONAL ASSOCIATION, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and MERSCORP, INC.,<br><br>Defendants. | **8:24CV502**<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs Eurell Montgomery ("Montgomery") and Sterling McKoy ("McKoy"), as trustee of the 3610 North 50th Street Land Trust, filed a Complaint, Filing No. 1, and were given leave to proceed in forma pauperis, Filing No. 6. The Court now conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

Also before the Court are Plaintiffs' Motion for Service of Process, Filing No. 7; Motion to Supplement, Filing No. 8; Motion for Temporary Restraining Order, Filing No. 9; Motion for Temporary Restraining Order, Filing No. 10; Motion for Default Judgment, Filing No. 15; and Amended Motion for Default Judgment, Filing No. 16. Additionally, Defendants each filed Motions to Stay their response deadline until the Court conducts an initial review of Plaintiffs' Complaint. Filing Nos. 11 & 14. The Court concludes that Plaintiffs fail to state a claim, and their Complaint is subject to dismissal. Accordingly, each of Plaintiffs' motions are denied. Defendants' Motions to Stay are denied as moot.

## I. SUMMARY OF COMPLAINT

Montgomery alleges he is the successor in interest, grantor, and sole beneficiary of the 3610 N. 50th Street Land Trust ("the Land Trust"), a Nebraska land trust established on June 6, 2023. Filing No. 1 at 2, 8. McKoy is the Land Trust's trustee. Filing No. 1 at 2. The Land Trust owns a parcel of real property (the "Subject Property") located at 3610 North 50th Street in Omaha, Nebraska. *Id*.

On August 24, 2005, Montgomery's parents, Euell and Tammera Montgomery, purchased the Subject Property for approximately $100,000. *Id*. at 4. Montgomery's parents financed the purchase through a Deed of Trust ("DOT") executed in favor of U.S. Bank National Association ("U.S. Bank"), with Mortgage Electronic Registration Systems, Inc. ("MERS") named as nominee and beneficiary. *Id*.; *see also id*. at 26-27. The DOT contemplated the rights of a "successor in interest." *Id*. at 4; *see also id*. at 27. The DOT defined "successor in interest" as "any party who has taken title to the [Subject] Property," regardless of whether that party assumed the obligations of the loan or security agreement. *Id*. at 4-5, *see also id*. at 27.

After Montgomery's father died in July 2012, Montgomery's mother executed a warranty deed, naming Plaintiff Montgomery as joint tenant to the Subject Property. *Id*. at 5. Montgomery's mother died in March 2018. *Id*. From March 2018 until January 2021, Montgomery made mortgage payments to Defendants under the DOT. *Id*. Defendants accepted the payments from Montgomery and, during that period, Defendants never asserted that Montgomery was not the "successor in interest," contemplated by the DOT. *Id*. Montgomery continued to reside at the Subject Property and had done so since August 2005. *Id*.

Following Tammera's death, Montgomery's grandmother, Christina Coffee, allegedly contacted U.S. Bank and requested that mortgage statements and other notices be sent to Coffee at her own address. *Id.* at 5-6. The DOT required that all notices be delivered to the Subject Property unless the "Borrower" changed the address. *See id.* at 34. Montgomery alleges that Coffee was not a lawful successor in interest and that he does not know how Coffee successfully redirected the notices to her own address. *Id.* at 6. Montgomery believes his mother never authorized mortgage statements or notices to be sent to Coffee. *Id.* at 7. The notices were sent to Coffee's address and, due to an interpersonal conflict between Coffee and Montgomery, Montgomery does not know how much is owed on back payments on the Subject Property. *Id.* at 6. Nor does Montgomery know who was servicing the loan or whether there were other loss mitigation options. *Id.* at 6-7.

In January 2021, Montgomery missed several payments on the DOT, but he did not receive a notice of default at the Subject Property. *Id.* at 6. In January 2023, McKoy helped Montgomery contact U.S. Bank to attempt to make back payments and service the loan. *Id.* at 7. U.S. Bank asked Montgomery to provide "successor of interest" documentation to prove he was the sole heir of the Subject Property. *Id.* On March 17, 2023, while Montgomery worked to obtain and complete the successor of interest documentation, he removed his mother's name from the deed. *Id.* at 8. On the same day, Montgomery sent U.S. Bank a copy of the new deed. *Id.*

In April 2023, Montgomery returned all documents U.S. Bank requested to show he was the successor in interest, except for the actual successor of interest form. *Id.* Montgomery claims U.S. Bank never provided the successor of interest form. *Id.* At some point after submitting the documents, Montgomery contacted U.S. Bank to check the status of his request to pay on

the loan. Id. Montgomery was told that he needed to fill out the successor of interest form and a court order or affidavit stating that he was the legal heir to the Subject Property. Id.

On June 6, 2023, Montgomery placed the Subject Property into an inter vivos trust for estate planning purposes. Id. He appointed McKoy as trustee. Id.

Plaintiffs assert three causes of action. In Count I, they allege Defendants violated the Garn-St Germain Act, 12 U.S.C. §§ 1701j-3(d), by refusing to allow Plaintiffs to "reinstate" and begin paying the mortgage. Filing No. 1 at 9. Though Plaintiffs' citations are varied, they appear to assert that their rights derive from 12 U.S.C. §§ 1701j-3(d)(5) and 1701j-3(d)(6), which, respectively, prohibit a lender from enforcing a "due on sale" clause where real property is transferred to a borrower's relative or children following the borrower's death. See Filing No. 1 at 14.

In Count II, Plaintiffs allege Defendants violated regulations promulgated under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., specifically 12 C.F.R. § 1024.39(a). Under certain circumstances, § 1024.39(a) requires a servicer to "make good faith efforts to establish live contact with a delinquent borrower" within 36 days of delinquency and "inform the borrower about the availability of loss mitigation options." 12 C.F.R. § 1024.39(a). Plaintiffs allege Defendants violated the regulation because they failed to make live contact with Montgomery once the account was 36 days past due. Filing No. 1 at 17.

In Count III, Plaintiffs allege Defendants violated the Nebraska Deceptive Trade Practice Act ("NDTPA"), Neb. Rev. Stat. § 87-302(a), and the principles of good faith and dealing. Filing No. 1 at 18. Plaintiffs allege Defendants are fraudulently withholding information to prevent Plaintiff from

4

making the back payments so Defendants can foreclose and illegally acquire the Subject Property. *Id.* at 19. Plaintiffs allege that sending mortgage statements and notices to Coffee's address also violates the implied covenant of good faith and fair dealing. *See id.* at 19-20.

Under a heading labeled Count V (there is no Count IV), Plaintiffs seek a preliminary injunction against foreclosure proceedings, pending resolution of this case. *Id.* at 20-21. Plaintiffs also request that the Court retroactively enjoin Defendants from collecting mortgage payments, beginning in January 2023—the date Montgomery attempted to make back payments and start servicing the loan. *Id.* at 21. Plaintiffs also seek damages and a permanent injunction that

- precludes Defendants from taking possession of the Subject Property;
- precludes Defendants from collecting mortgage payments from January 2023 through the date this litigation ends;
- compels Defendants to transfer interest in the DOT to Montgomery as the successor in interest without requiring Montgomery to assume the loan;
- compels Defendant to recognize Montgomery as the lawful successor in interest and permit Montgomery to make back payments or grant Plaintiffs access to available loss mitigation options.
- quiets title to the Subject Property.

Filing No. 1 at 23.

## II. INITIAL REVIEW

### A. Standards on Initial Review

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted,

5

or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

**B. Plaintiffs' Standing and Ability to Bring Suit**

As a preliminary matter, McKoy, as trustee, must be dismissed from this action. A non-lawyer cannot represent another entity, including a trust, in this Court. *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 347-48 (8th Cir.

1994) ("A nonlawyer, such as these purported 'trustee(s) pro se' has no right to represent another entity, *i.e.*, a trust, in a court of the United States.") (citing 28 U.S.C. § 1654); *Joshua Bldg. Tr. v. Clementi,* 78 F.3d 588 (8th Cir. 1996) ("A non-lawyer trustee may not represent a trust pro se in federal court."). Even construing the Complaint liberally, the Complaint alleges no injury to McKoy personally. To the extent the Complaint mentions McKoy, it is only to allege that Defendants' actions prevent him, as trustee for the Land Trust, from making back payments on the loan. *See, e.g.,* Filing No. 1 at 17, 18. Thus, McKoy as trustee must obtain counsel or be dismissed from this action.

Additionally, the allegations suggest that Montgomery likely lacks standing to bring any the claims in the Complaint. Montgomery is the grantor and beneficiary of the Land Trust. *See* Filing No. 1 at 2. "As a general rule, a beneficiary may not bring an action at law on behalf of a trust against a third party." *Int'l Ass'n of Fire Fighters, Loc. 2665 v. City of Clayton,* 320 F.3d 849, 851 (8th Cir. 2003) (citing Restatement (Second) of Trusts § 281(1) (1957)). "The right to bring such an action belongs to the trustee." *Id.* "Ordinarily 'a beneficiary cannot even assert a claim of the trust in equity.'" *Id.* (quoting *Ricke v. Armco, Inc.,* 92 F.3d 720, 724 (8th Cir. 1996)); *see also Klingelhoefer v. Parker, Grossart, Bahensky & Beucke, L.L.P.,* 834 N.W.2d 249, 255 (Neb. Ct. App. 2013) ([B]eneficiaries of a trust may generally enforce a cause of action that the trustee has against a third party only if the trustee cannot or will not do so.").

The allegations of the Complaint suggest that when Montgomery conveyed the Subject Property to the Land Trust, the Land Trust would have also acquired Montgomery's claims against Defendants. *See* Filing No. 1 at 8. This likely means that Montgomery, as beneficiary, could only bring this suit as a derivative action that meets the requirements of Federal Rule of Civil

Procedure 23.1.  See *Int'l Ass'n of Fire Fighters*, 320 F.3d at 851.  A beneficiary bringing a derivative action must set forth in the complaint what actions were taken to comply with Rule 23.1.  See *id.*; *see also Klingelhoefer*, 834 N.W.2d at 255.  McKoy is listed as a plaintiff, and Montgomery has not otherwise alleged that he requested McKoy to bring this action, but McKoy refused or was unable.  Based on the allegations of the Complaint, it is unclear whether Montgomery has standing to bring these claims.  Nevertheless, the Court will give Plaintiffs 30 days to file an amended complaint to clarify their ability to bring these claims.

**B. Sufficiency of Plaintiffs' Claims**

For the reasons stated below, even assuming Plaintiffs have standing, Plaintiffs have not stated any plausible claims.  Plaintiffs' federal claims likely provide no private right of action and, even if they did, Plaintiffs' allegations would not support such claims.  Nevertheless, out of an abundance of caution, the Court will give Plaintiffs leave to file an amended complaint to state plausible claims.

### 1. *Count I: Violations of Garn-St Germain Act*

Construed liberally, Montgomery asserts that because he is the rightful heir to the Subject Property, he is entitled to damages for Defendants'[1] violations of the Garn-St Germain Act, 12 U.S.C. §§ 1701j-3(d)(5), (6), and (9).[2]  *See* Filing No. 1 at 9-16.  The Garn-St Germain Act prohibits states from banning due-on-sale clauses.  12 U.S.C. §§ 1701j-3(b)(1); *see also Est. of Cornell*

---

[1] Plaintiffs bring each Count against all Defendants and do not specify the conduct of each Defendant that contributed to the cause of action.

[2] Plaintiffs repeatedly reference "12 U.S.C. § 1701(d)(8)" as a basis for Montgomery's claim, but no statute with that citation exists.  From the context of the pleadings, the Court presumes that Plaintiffs are referencing 12 U.S.C. §§ 1701j-3(d)(9), which prevents a lender from exercising a due-on-sale option upon "a transfer into an inter vivos trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property."

8

*v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1011 (6th Cir. 2018). A due-on-sale clause is a "contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." 12 U.S.C. § 1701j-3(a)(1). Under the Garn-St Germain Act, a due-on-sale clause "is presumptively valid unless it qualifies as one of nine exceptions listed in § 1701j-3(d)." *Est. of Cornell*, 908 F.3d at 1011. Montgomery appears to claim that Defendants violated the Garn-St Germain Act by enforcing a due-on-sale clause even though Montgomery meets several exceptions under § 1701j-3(d).

Plaintiffs fail to state a claim for several reasons. First, several courts have recognized that the Garn-St Germain Act provides no private right of action. *See Estate of Cornell*, 908 F.3d at 1013–14; *Lau v. Specialized Loan Servicing, LLC*, No. 23 CIV. 1385, 2024 WL 3219810, at *6 (S.D.N.Y. June 28, 2024); *Fiecke-Stifter v. MidCountry Bank*, No. 22-CV-3056, 2023 WL 5844758, at *6 (D. Minn. Sept. 11, 2023); *Nelson v. Nationstar Mortg. LLC*, No. 7:16-CV-00307-BR, 2017 WL 1167230, at *2 (E.D.N.C. Mar. 28, 2017); *Turman v. Wells Fargo Bank, N.A.*, No. 3:15-cv-1119, 2016 WL 5467947, at *3 (M.D. Tenn. Sept. 29, 2016); *Dupuis v. Yorkville Fed. Sav. and Loan Ass'n*, 589 F. Supp. 820, 821–22 (S.D.N.Y. 1984). Plaintiffs do not identify, and research does not disclose, any authority to the contrary. Accordingly, Plaintiffs' claims under the Garn-St Germain Act must be dismissed.

Further, even if the Garn-St Germain Act created a private right of action, Plaintiffs could not have stated a claim. The exceptions to the Garn-St Germain Act could have only been triggered if Defendants attempted to enforce a due-on-sale clause. Plaintiffs did not allege in the Complaint or any other

9

pleadings that Defendants accelerated the loan pursuant to a due-on-sale clause. *See Lau*, 2024 WL 3219810, at *6 (dismissing claim where—even if Garn-St Germain Act provided a private right of action—the plaintiffs failed to allege that the full balance was sought in connection with enforcement of a due-on-sale clause). Accordingly, Plaintiffs have failed to state a claim even if the Garn-St Germain Act provided a private right of action.

### 2. Count II: Violations of Regulation X

Montgomery asserts that Defendants violated 12 C.F.R. § 1024.39 by not making live contact with Montgomery once he was thirty-six (36) days past due on his account to inform Montgomery about loss mitigation options. *See* Filing No. 1 at 17. He alleges that Defendants caused the arrears on the mortgage to accrue unjustifiably when they refused to accept payment after January 2023. *Id*. In total, according to Montgomery, Defendants' failure to inform caused an additional $20,000 to accrue to the back payment. *Id*.

Section 1024.39(a) provides that a loan servicer must make live contact with a borrower once they are thirty-six (36) days past due on their account for the purpose of advising the borrower of loss mitigation options which may be available to the borrower. A majority of courts that have addressed claims under 12 C.F.R. § 1024.39 have concluded that the regulation provides no private right of action. *Canizales v. Wolf Firm*, No. 22-CV-208, 2022 WL 1585180, at *3 (C.D. Cal. Apr. 20, 2022) (acknowledging that "the majority of courts to consider this question have concluded that § 1024.39 does not provide a right of action.");[3] *see also Gresham v. Wells Fargo Bank, N.A.*, No. 15-40748, 2016 WL 1127717, at *3 (5th Cir. Mar. 21, 2016) ("Unlike Section 1024.41, Section 1024.39 does not explicitly convey a private right of action to

---

[3] Although the court in *Canizales* recognized that a majority of courts have concluded that § 1024.39 confers no private right of action, it ultimately disagreed with the majority and concluded that § 1024.39 does create a private right of action. 2022 WL 1585180, at *3.

10

borrowers."). While the Eighth Circuit has not addressed this question, district courts in this circuit have concluded that 12 C.F.R. § 1024.39 provides no private cause of action. *See Todaro v. Ditech Fin. LLC*, No. 4:18-CV-00261, 2018 WL 11510960, at *2 (W.D. Mo. Oct. 26, 2018) (citing *Cilien v. U.S. Bank Nat'l Assoc.*, 687 F. App'x 789, 792 n.2 (11th Cir. 2017)).

Even if § 1024.39(a) provided a private cause of action, Montgomery's allegations fall short of stating a claim for several reasons. For example, § 1024.39(a) applies only to loan servicers and Montgomery does not allege which of the Defendants is the loan servicer. Additionally, other than to state that, in January 2021, Montgomery started missing payments, he does not allege when he became a "delinquent borrower," for purposes of the regulation. *See* Filing No. 1 at 6. Section 1024.39(a) also requires that the servicer make "good faith efforts" to make live contact with the delinquent borrower. Montgomery's allegations suggest that, in April 2023, three months after Montgomery first contacted Defendant U.S. Bank, U.S. Bank made efforts to verify that Montgomery was the rightful heir to the Subject Property. *See* Filing No. 1 at 8. Based on these allegations, the Court cannot conclude that Defendants failed to make good faith efforts to establish contact.

In addition, Montgomery does not specify his damages. Under RESPA, § 1024.39's implementing statute, a plaintiff must plead "actual damages." 12 U.S.C. § 2605(f)(1); *see also Rozich v. MTC Fin. Inc.*, No. CV-23-00210, 2023 WL 7089801, at *6 (D. Ariz. Oct. 26, 2023) (noting that RESPA would provide the foundation for a private right of action for violations of § 1024.39, if there is one); *Sitanggang v. Countrywide Home Loans, Inc.*, 419 F. App'x 756, 757 (9th Cir. 2011) (noting that § 2605(f)(1) limits recovery to "actual damages" where there is no pattern or practice of noncompliance with the requirements of § 2605). Montgomery's allegations are too vague to identify his actual

11

damages. He appears to allege that his actual damages were the approximately $20,000 in arrears, and the arrears increased "month after consecutive month, unjustifiably" because Defendants did not provide timely notice of mitigation options. *See* Filing No. 1 at 17. However, Montgomery alleges no facts from which the Court can conclude that the $20,000 in arrears resulted solely from Defendants' violation of § 1024.39, and Montgomery identifies no other actual damages. Accordingly, he has not alleged any independent harm, as required by RESPA.

In sum, even if § 1024.39(a) provides a private right of action, Plaintiffs' Complaint fails to set forth enough factual allegations to state a plausible claim. Count II is therefore subject to dismissal.

### 3. Count III: Nebraska Deceptive Trade Practices Act

In Count III,[4] Plaintiffs allege Defendants violated the Nebraska Deceptive Trade Practices Act ("NDTPA"), Neb. Rev. Stat. § 87-302(a), by failing to send mortgage payments and a notice of default to the address of the Subject Property. In so doing, according to Plaintiffs, Defendants fraudulently concealed the amount owed in back payments in a scheme to then foreclose on the Subject Property. Filing No. 1 at 18.

This claim fails for several reasons. First, although "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties," *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted), a pro se plaintiff "still must allege sufficient facts to support the claims advanced." *Stone*, 364 F.3d at 914. Thus, a pro se

---

[4] A federal district court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over claims arising under state law after dismissal of the claim(s) over which the court has original jurisdiction. Each of Plaintiffs' federal claims are subject to dismissal and likely provide no private right of action. Thus, unless Plaintiffs can allege a valid federal claim in an amended complaint, Plaintiffs' current federal claims would be dismissed, and the Court likely would not exercise supplemental jurisdiction over the remaining state law claims.

plaintiff alleging fraud must do so with particularity in compliance with Rule 9(b). *See Mayer v. Countrywide Home Loans*, 647 F.3d 789, 792 (8th Cir. 2011). Rule 9(b) applies if Plaintiffs' claims "are grounded in fraud." *Collins v. Metro. Life Ins. Co.*, 117 F.4th 1010, 1017 (8th Cir. 2024). Here, while Plaintiffs' specific cause of action falls under the NDTPA, they allege Defendants "with[held] the amount due to reinstate the loan, so that they can fraudulently foreclose on and seize or 'obtain [Plaintiff's] property.'" Filing No. 1 at 19. Thus, these allegations are grounded in fraud.

Plaintiffs' bare allegations do not allege fraud "with particularity" as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a fraud claim "specify the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts." *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch.*, 851 F.3d 800, 804 (8th Cir. 2017) (quoting *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015)). "In other words, [Federal] Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1050 (8th Cir. 2024). Though Plaintiffs label Defendants' actions as a fraudulent scheme, they do not fill in the details of the fraud. For example, Plaintiff does not allege details of the fraud scheme and does not identify which of the Defendants perpetrated the fraud. Nor do Plaintiffs identify a false or fraudulent promise or representation by Defendants. Put another way, labeling something as fraudulent does not make it so and Plaintiffs' bald allegations do not establish the "what" and "how" of the fraud. So, the claim fails under Rule 9(b).

Additionally, Plaintiffs fail to state any claim under the NDTPA. The purpose of the NDTPA is to provide "protection from deception for both

13

consumers and competitors." *Richdale Dev. Co. v. McNeil Co.*, 508 N.W.2d 853, 860 (Neb. 1993). Plaintiff apparently relies on § 87-302(a)(16)(i) and (ii), which makes it a deceptive trade practice for any person in the course of his business to use any scheme or device to defraud by means of "[o]btaining money or property by knowingly false or fraudulent pretenses, representations, or promises" or "[s]elling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme." Neb. Rev. Stat. § 87-302(a)(16)(i), (ii). The NDTPA only applies to "the purchase of goods or services." Neb. Rev. Stat. § 87-303.10; *see also Mirandette v. Nelnet, Inc.*, 720 F. App'x 288, 292 (6th Cir. 2018) (relying on § 87-303.10 to conclude that § 87-302(a)(16) applies only to goods or services). No cases have applied the NDTPA "to loan payments or suggesting that loan servicing constitutes a good or service." *Mirandette*, 720 F. App'x at 292. Section 87-302(a)(16) "proscribes an enumerated list of conduct that generally covers misrepresentations in sales; none of the enumerated practices describe the late crediting of loan payments." *Id.* Thus, the NDTPA would not apply to Plaintiffs' claims.

### 4. *Implied Covenant of Good Faith and Fair Dealing*

As an alternative allegation under Count III, Plaintiffs allege that, by failing to tell Defendants the amount owed on the loan, Defendants violated the implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract. *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 655 N.W.2d 390, 400 (Neb. 2003) (citing *Reichert v. Rubloff Hammond, L.L.C.*, 645 N.W.2d 519 (Neb. 2002)). A party violates the covenant of good faith and fair dealing only when the party violates, nullifies, or significantly impairs any benefit of the contract. *Id.* The scope of conduct prohibited by the covenant of

good faith is circumscribed by the purposes and express terms of the contract. *Id.* The implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose. *Id.*

Plaintiffs' claim fails because they do not allege sufficient facts to establish the existence of a contract with Defendants. *Schroer v. Baldwin Filters, Inc.*, No. 8:13CV101, 2013 WL 5781721, at *3 (D. Neb. Oct. 25, 2013) (claim for breach of the implied covenant of good faith and fair dealing also fails where allegations fail to show contract existed). As noted above, Plaintiffs' do not identify which of the Defendants is allegedly at fault for failing to disclose the amount necessary to pay off the loan. Moreover, Plaintiffs appear to allege that though Montgomery is the rightful owner, he never "assumed obligations under the note and/or the security agreement." Filing No. 1 at 13. Because Plaintiffs have not sufficiently alleged the valid existence of a contract, the Court cannot conclude that they have stated a claim for breach of the implied covenant of good faith and fair dealing.

### III.  OTHER PENDING MOTIONS

**A. Motion for Service of Process, Filing No. 7, and Motions for Default Judgment, Filing Nos. 15 & 16**

Plaintiffs' Motion for Service of Process, Filing No. 7, is denied because, for the reasons stated above, the Complaint is subject to dismissal. "Rule 4 requires plaintiffs to serve each defendant with a summons and a copy of the complaint. But district courts cannot issue summonses in in forma pauperis [non-prisoner and] prisoner cases until after screening the complaint for frivolousness and other defects under 28 U.S.C. §§ 1915(e) and 1915A(b)." *See Welch v. Byrd*, No. 4:23CV3186, 2024 WL 3292696, at *1 (D. Neb. July 3, 2024) (quoting *Jackson v. Herrington*, 393 F. App'x 348, 353 (6th Cir. 2010) (internal

15

citation omitted)). Because Plaintiffs' Complaint is subject to dismissal under 28 U.S.C. § 1915(e), the Motion is denied.

For similar reasons, Plaintiffs' Motion for Default Judgment, Filing No. 15, and Amended Motion for Default Judgment, Filing No. 16, must be denied. This is so for at least two reasons. First, before Defendants can be served, the Court must complete its review under 28 U.S.C. § 1915(e)(2) to determine whether summary dismissal is appropriate. With this Memorandum and Order, the Court determined that Plaintiffs' Complaint is subject to dismissal, so service cannot be completed, and Defendants are not yet required to respond to Plaintiffs' claims.[5] Accordingly, the Motions for Default Judgment are denied.

Second, even if Defendants had been validly served, the motions are premature because default has not been entered against any Defendant. The Eighth Circuit has been quite clear that when a party has failed to plead or otherwise defend against a pleading listed in Fed. R. Civ. P. 7(a), entry of default under Fed. R. Civ. P. 55(a) *must* precede grant of a default judgment under Rule 55(b). *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). Entering default judgment without a preceding clerk's entry of default is reversible error. *See Tollefson v. Pladson*, 508 F. App'x 593, 595 (8th Cir. 2013). Accordingly, these Motions are denied.

**B. Motions for Temporary Restraining Order, Filing Nos. 8, 9, & 10.**

In the Complaint, under the heading Count V, Plaintiffs request a temporary restraining order ("TRO") and preliminary injunction, prohibiting

---

[5] Defendants have each filed motions to stay, requesting an order that states no Defendant is required to answer or otherwise respond to the Complaint until the Court completes its pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2). *See* Filing Nos. 11 & 14. The Court will deny these motions as moot because a stay is not necessary, but Defendants shall not be required to answer or otherwise respond to the Complaint, nor are Defendants required to answer or respond to any amended complaint until the Court completes further review under § 1915(e)(2).

16

Defendants from enforcing monthly payments or initiating foreclosure proceedings pending this litigation. Filing No. 1 at 20-22. Plaintiffs' Motion to Supplement seeks to supplement that request because Defendants initiated foreclosure proceedings against the Subject Property. Filing No. 8 at 2. Plaintiffs' first Motion for TRO asserts that Defendants were still reviewing Plaintiffs' successor in interest documents in July 2025. Filing No. 9 at 7. Plaintiffs' second Motion for Ex Parte TRO provides information of further communication with Defendants and asserts that Plaintiffs' successor in interest documentation was still under review. Filing No. 10 at 4. In each Motion for TRO, Plaintiff speculates that Defendants are stalling their review of his documentation until the foreclosure proceeding is complete. *See, e.g.,* Filing No. 1 at 22; Filing No. 8 at 2; Filing No. 10 at 4.

Liberally construed, Plaintiffs seek a TRO pursuant to Federal Rule of Civil Procedure 65(b), which allows the Court to issue a temporary restraining order without notice to avoid "immediate and irreparable injury, loss, or damage" to the moving party and only if "the movant[] . . . certifies in writing any efforts made to give notice and the reasons why it should not be required." Preliminary injunctive relief is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Reviewing Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

To obtain a preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his

17

favor; and (4) that an injunction is in the public interest. *Id.* at 20. In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). The absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

For the reasons stated above, Plaintiffs have not shown that they are likely to succeed on the merits. Plaintiffs appear to lack standing or ability to bring this suit and the federal claims are based on statutes and regulations that likely provide no private right of action. Plaintiffs also have failed to provide any evidence or notice of Defendants' alleged fraudulent and unfair practices. *See Chisano v. Newton*, No. 4:23-CV-3133, 2024 WL 2092000, at *5 (D. Neb. May 9, 2024) ("[T]he Court cannot issue a preliminary injunction without some evidence to support the necessary findings of fact."); *Guar. Trust Co. of New York v. Henwood*, 86 F.2d 347, 354 (8th Cir. 1936) (there must be "competent, material, and credible evidence[,]" because "[f]acts, not conclusions or opinions, must be stated upon which the court may base its judgment, according to established principles governing equitable relief by injunction"). Accordingly, upon careful consideration, the Court concludes Plaintiffs' Motions for TRO and Preliminary Injunction should be denied without prejudice to reassertion because Plaintiffs have failed to establish that they are likely to succeed on the merits.

## V. CONCLUSION

Plaintiffs' Complaint fails to state a claim for relief and McKoy as trustee cannot proceed in this matter without an attorney. On the Court's own motion and out of an abundance of caution, Plaintiffs will be given 30 days to file an amended complaint that clearly sets forth their standing to sue and clearly

states a valid claim for relief. To be clear, Plaintiff's amended complaint must restate the relevant allegations of his Complaint, Filing No. 1, and any new allegations. Plaintiffs should be mindful to describe the legal basis for their claims and the way they have been individually harmed by Defendants' illegal conduct. Plaintiffs also must state with particularity any allegations of fraud. Plaintiffs are warned that any amended complaint they file will supersede, not supplement, their prior pleadings.

If Plaintiffs fail to file an amended complaint in accordance with this Memorandum and Order, their claims will be dismissed without prejudice and without further notice. The Court reserves the right to conduct further review of Plaintiffs' claims pursuant to 28 U.S.C. § 1915(e)(2) after they address the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1. Plaintiffs shall have until **October 27, 2025**, to file an amended complaint that clearly states a valid claim. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

2. In the event that either or both Plaintiffs file an amended complaint, Plaintiffs shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiffs are warned that an amended complaint will supersede, not supplement, their prior pleadings.

3. The Court reserves the right to conduct further review of Plaintiffs' claims pursuant to 28 U.S.C. § 1915(e)(2) in the event either or both file an amended complaint.

4. Plaintiff Sterling McKoy, as trustee of the 3610 North 50th Street Land Trust, must obtain counsel on or before **October 27, 2025**. If counsel does not appear on or before October 29, 2025, the Court will dismiss Sterling McKoy, as trustee, as a Plaintiff and this matter will proceed on Eurell Montgomery's claims only.

5. Plaintiffs' Motion for Service of Process, Filing No. 7; Motion to Supplement, Filing No. 8; Motion for Temporary Restraining Order, Filing No. 9; Motion for Temporary Restraining Order, Filing No. 10; Motion for Default Judgment, Filing No. 15; and Amended Motion for Default Judgment, Filing No. 16, are denied without prejudice to reassertion.

6. Defendants' Motions to Stay, Filing Nos. 11 & 14, are denied as moot. Defendants are not required to answer or otherwise respond to the Complaint, Filing No. 1, nor are Defendants required to answer or respond to any amended complaint until the Court completes further review of any amended complaint under § 1915(e)(2).

7. The Clerk of the Court is directed to set the following pro se case management deadline: **October 27, 2025**: check for amended complaint.

Dated this 26th day of September, 2025.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
Senior United States District Judge

20